IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KORY S. L., | : | CIVIL ACTION |
| Plaintiff, | : |  |
| v. | : |  |
|  | : |  |
| FRANK J. BISIGNANO,[1] | : |  |
| Commissioner of Social Security, | : | No. 22-02821 |
| Defendant. | : |  |
|  | : |  |

### MEMORANDUM OPINION

**PAMELA A. CARLOS**
**U.S. MAGISTRATE JUDGE**                                           **July 22, 2025**

Plaintiff Kory S. L. ("Plaintiff" or "Mr. L") appeals the Commissioner of Social Security's final decision to deny his claim for benefits. He contends that the Administrative Law Judge ("ALJ") failed to properly weigh the medical opinion evidence, and therefore, Plaintiff's mental residual functional capacity ("RFC") determination is not supported by substantial evidence. He argues, among other things, that the ALJ did not adequately explain why she found the August 2021 opinion by his treating psychiatrist was "more persuasive" than his earlier June 2020 evaluation. Indeed, a common thread throughout Plaintiff's brief is the contention that the ALJ "silently rejected" portions of the opinion evidence without satisfactory explanation. Finally, Plaintiff contends that the ALJ failed to properly evaluate his subjective testimony and statements regarding his disabling conditions. As such, Plaintiff urges the Court to reverse the decision of the Commissioner and order that he be found disabled and entitled to benefits, or alternatively, to order a remand of his claims to the Commissioner for a new hearing.

---

[1]   Frank J. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Commissioner disagrees, arguing that the ALJ's analysis was appropriate under the governing regulations. The Commissioner explains that the ALJ carefully considered the entire record and discussed Plaintiff's treating notes, which showed improvement in his condition after he stopped working his semiskilled job at a foundry and when he consistently took the appropriate medication. The ALJ also supported her RFC finding by discussing Plaintiff's activities of daily living, which included, among other things, basic cleaning, driving, shopping, and getting along with others. According to the Commissioner, Plaintiff's criticisms of the RFC determination do not entitle him to relief. When reading the decision as a whole, the Commissioner emphasizes that the ALJ adequately explained why she found some medical opinions more or less persuasive, and contrary to Plaintiff's suggestion, the regulations do not require detailed written analysis about how the ALJ considered each and every piece of evidence. Given this, the Commissioner argues that the ALJ's decision is supported by substantial evidence and must be affirmed.

For the reasons that follow, I will affirm the Commissioner's decision, and Mr. L's request for review is denied.

**I.     BACKGROUND**

**A.     Factual and Procedural History.**

Mr. L was born in January 1989, and was 31 years old as of the alleged onset date of disability. R.26, 69, 361. He completed high school, and his most recent work was as a laborer at the Bridesburg Foundry. R.49. In July and August of 2020, Mr. L filed applications for a period of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging he became unable to work due to disabling conditions on May 1, 2020. R.24, 264-282. These claims were initially denied on October 27, 2020, and upon reconsideration on January 27, 2021. R.24, 69-70, 101-02. Mr. L. then requested a hearing before an ALJ, *see* R.188-89, 191-93, and a hearing

was held on July 20, 2021, *see* R.43-68 ("hearing transcript"). After this hearing, the ALJ issued a written decision on September 22, 2021 denying Mr. L's claim. R.21-42 ("ALJ Decision"). The Appeals Council denied Mr. L's subsequent request for review, meaning the ALJ's written opinion became the final decision of the Commissioner. R.1-6. Mr. L now timely appeals.[2]

### B.  ALJ's Decision.

The ALJ evaluated Mr. L's claims using the five-step sequential analysis set forth in the Social Security regulations.[3] Beginning at step one, the ALJ determined that Mr. L has not engaged in substantial gainful activity since May 1, 2020. R.26.

At step two, the ALJ found that Mr. L suffered from the following severe impairments: schizoaffective disorder, generalized anxiety disorder with associated panic disorders, post-traumatic stress disorder ("PTSD"), sleep terror disorder, hypersomnia, obstructive sleep apnea, and narcolepsy. R.26 (citing 20 CFR 404.1520(c) and 416.920(c)). The ALJ further noted that Mr. L's self-reported body mass index ("BMI") is considered obese. R.27. However, she explained that there is no evidence of any specific or quantifiable impact on his pulmonary, musculoskeletal, endocrine, or cardiac functioning, and therefore his obesity was not a "severe impairment." R.27. Nonetheless, the ALJ considered his weight and how it may affect his ability to ambulate as well as his other body systems within the limitations of his RFC. R.27.

---

[2]   The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C § 636(c). *See* ECF Doc. No. 6.

[3]   The sequential analysis requires the ALJ to evaluate (1) whether claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering his residual functional capacity; and (5) whether the claimant can adjust to other work considering his residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201-202 (3d Cir. 2019) (citing 20 C.F.R. § 416.920(a)(4)(i)-(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

Moving on to step three, the ALJ concluded that none of Mr. L's impairments alone, or in combination, met or medically equaled the requirements of the impairments listed in the regulations. R.27-28.

Before reaching step four, the ALJ considered Mr. L's RFC.[4] After reviewing the objective medical evidence and the subjective opinions in the record, the ALJ determined that Mr. L "has the residual functional capacity to perform a full range of work at all exertional levels," but with several nonexertional limitations, which included the following: no more than occasionally balancing; no climbing of ladders, ropes or scaffolds; and no exposure to hazards, heights or dangerous machinery. R.29. The ALJ further explained that Mr. L is "limited to routine and repetitive tasks not on a moving line or mandated team, no contact with the public, incidental interactions with coworkers, occasional interactions with supervisors, and no more than occasional changes in work processes or tasks." R.29.

In reaching this determination, the ALJ recited Mr. L's hearing testimony and found that his medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. R.30. For example, the ALJ explained that treatment notes from November 2019 to February 2020 indicated that Mr. L denied sleep disturbances, had been more social, and loved his job. R.30 (citing Exs. 7F and 8F). By March 2020, however, he reported having an episode of paranoia and an episode in which he was confused and crying all day. R.30. Mr. L suggested these episodes could have been caused by overwhelming work-related stress, which was caused by newly

---

[4]   Residual functional capacity, or RFC, is defined as "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1).

4

imposed overtime requirements and threats of termination if schedules were not followed. R.30. Because he was unable to take time off and was exhausted, Mr. L reported at that time that he was considering getting another job or going on disability. R.30 (citing Ex. 9F). In April 2020, Mr. L still reported job related stress, but was sleeping and eating well, was compliant with his medication, and denied any side effects. R.30.

Mr. L was eventually terminated from his job, and by July 2020, he described a lot of anxiety about his employment situation and finances, which resulted in sleep struggles. R.30. Throughout the remainder of the year, Mr. L appeared stable at his sessions until January of 2021, in which he described two episodes of anxiety, paranoia, and confusion. R.30 (citing Ex. 22F).[5] By February 2021, he was more symptomatic, though he had been without his narcolepsy medication. R.31. He admitted that he had been receiving Klonopin from his primary care provider, which was contraindicated with his other medications. R.31. During this session, he was withdrawn, irritable, and anxious, and expressed anger at his providers and accused them of not wanting to help him. R.31. When he next returned to his primary care provider, his medications were switched, and he was explicitly advised not to take certain medications together to avoid adverse side effects. R.31 (citing Ex. 23F).

Four months later, in June of 2021, he returned to his psychiatrist, and he apologized for his prior behavior and reported that he was doing well. R.31 (citing Ex. 27F). He also noted that his medications were working well for him and that he enjoyed having decreased stress from not having a job. He further explained that he was exercising daily to keep his energy level up. R.31.[6]

---

[5]  Despite these episodes, his treating psychiatrist's notes indicated that Mr. L's attitude was "calm and cooperative," but "withdrawn." R.549. His thought processes were "goal directed and logical," and there were no delusions or hallucinations. R.549.

[6]  According to his treating psychiatrist's notes, Mr. L had not been seen in about four months but he "has been doing okay overall." R.633. Indeed, Mr. L reported that he "has not had any episodes or incidents since his last visit," that he has "been exercising daily and tries to keep his energy levels up," and that his stress decreased significantly

However, a month later, he complained of two breakthrough episodes of "psychiatric issues," including panic attacks, crying, disorientation, and feeling overwhelmed. R.31.

After conducting a longitudinal review of the above-described treatment notes, the ALJ explained that Mr. L's mental status examinations were generally normal except for intermittent depressive or anxious moods. R.33. His insight, judgment, perception, comprehension and concentration appeared unimpaired, and he reported no agoraphobia or self-isolation to his providers. R.33. The ALJ noted that although Mr. L testified that his mental health improved for only "very short" periods, the treatment notes suggest otherwise. R.33. The ALJ explained that when he experienced significant symptoms in February of 2021, Plaintiff was receiving contraindicated medications from separate providers, and said symptoms resolved when his medications were adjusted. R.33. The ALJ further explained that although Mr. L alleged that he had poor motivation, he consistently reported to his providers that he attempted to remain active and to exercise to keep his energy levels up. R.33.

The ALJ then assessed the medical opinion evidence of seven providers, finding some evaluations more persuasive than others. As relevant to the instant appeal, the ALJ reviewed two opinions from Mr. L's treating psychiatrist, Dr. Raja Abbas—one dated June 12, 2020, and one dated August 4, 2021. R.34-35. In the June 2020 opinion, the ALJ noted that Dr. Abbas listed a host of symptoms, which resulted in marked limitations across several behaviors including, but not limited to, remembering locations and work-like procedures and understanding and remembering detailed instructions. R.34 (citing Exs. 12F and 13F). Dr. Abbas further noted that Mr. L is unable to focus for extended periods and that he would be absent from work more than

---

while not working. R.633. During that telehealth visit, his attitude was described as "calm and cooperative," his thought processes were "goal directed and logical," and there were no delusions or hallucinations. R.635.

three times per month. R.34. However, the ALJ explained that Dr. Abbas's opinion was not persuasive because it was not supported by his own contemporaneous notes in which he reported that Mr. L was sleeping well, taking his medications as prescribed, and had generally normal mental status examinations. R.34 (citing Exs. 10F and 11F). The opinion also was not consistent with Mr. L's own self-reports to Dr. Abbas during these periods. R.34 (citing Exs. 9F to 11F).

However, the ALJ found that Dr. Abbas's August 2021 report was "more persuasive," insofar as it indicated that Mr. L's condition had improved to the degree in which he did not have marked limitations in any area of work-related functioning. R.34-35. The ALJ explained that Dr. Abbas's conclusions were consistent with the treatment records and mental health examinations during this timeframe, which showed Mr. L's improvement with treatment and decreased stressors. R.35 (citing Exs. 11F, 15F, 16F, 20F, and 27F). That said, the ALJ rejected Dr. Abbas's conclusion that Mr. L would likely be absent from work two to three times per month, explaining that the record indicated that Mr. L had significant periods of stability and improved symptoms with only episodic flares that would not preclude regular attendance throughout the year. R.34.

The ALJ further analyzed the report of Dr. Christina Ryser, who conducted a single psychologic evaluation of Mr. L on July 7, 2021. R.34. Dr. Ryser opined that Mr. L had the same limitations as those described by Dr. Abbas in his June 2020 report, which the ALJ rejected for largely the same reasons as stated above. R.34. The ALJ also explained that the results of her examination were not consistent with her ultimate opinion. R.34. For example, Mr. L's memory was only mildly impaired on examination, with good word recall, and he was able to provide a coherent medical and personal history. R.34. The ALJ further explained that there was no evidence of internal stimuli, no looseness of associations or tangential thinking, his speech was clear and

7

coherent, and there was no indication that he had any difficulty following instructions or staying on topic. R.34.

Given all this, the ALJ concluded the analysis and explained as follows:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by evidence of improvement with appropriate treatment and medication compliance. This is reflected not only in the mental status examination findings and claimant's statements throughout the records, but also in the opinions of Dr. Abbas, his treating psychiatrist, who specifically detailed improvement in the claimant's workrelated capabilities … Although the claimant has reported some episodes of exacerbation of symptoms, these appear primarily related to the addition of contraindicated medication due to poor communication … After his medications were readjusted, his symptoms appeared fairly well-controlled … There is little evidence of symptoms from the claimant's alleged sleep impairments, which have not been confirmed by objective testing. Nonetheless, out of an abundance of caution, the undersigned has assessed postural, environmental limitations, and task complexity limitations to account for any sleep related symptoms.

R.35 (internal citations omitted).

At step four, the ALJ found that given Mr. L's RFC, he could not perform any past relevant work. R.36. The ALJ then proceeded to step five and identified multiple jobs in the national economy that Mr. L could perform, including laborer (stores), hand packager, assembler (electrical accessories), and finish inspector. R.36-37. As such, the ALJ concluded that Mr. L. was not disabled as defined by the Social Security Act ("SSA"). R.37

## II.   STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305

8

U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). In applying this deferential standard of review, the Court "must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 552). In other words, the Court must not re-weigh the evidence before the ALJ, but instead must assess whether substantial evidence supports the ALJ's findings. *See Chandler* v. *Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

In doing so, the Court determines whether the ALJ's decision "meets the burden of articulation demanded by the courts to enable informed judicial review." *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *5 (M.D. Pa. May 19, 2021). In this regard, the ALJ need not "employ particular 'magic' words" or "adhere to a particular format in conducting his analysis." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004)). The Court requires—at the very least—that the ALJ "set forth the reasons for [their] decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

### III.   DISCUSSION

Before addressing each of Plaintiff's specific challenges, I broadly agree with the Commissioner that the ALJ's RFC determination is supported by substantial evidence. The Social Security regulations explain that a claimant's RFC is the "most" that they can do despite their limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 ("RFC is not the least an individual can do despite his or her limitations or

9

restrictions, but the *most*.") (emphasis in original). Plaintiff bears the burden of submitting evidence concerning his disability status. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled."). However, "[t]he existence of a medical condition does not alone demonstrate a disability for purposes of the Social Security Act." *Raglin v. Massanari*, 39 F. App'x 777, 779 (3d Cir. 2002) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)). Rather, the ALJ considers the degree in which specific conditions result in functional limitations that prevent a claimant from obtaining substantial gainful employment in the national economy. *See Raglin*, 39 F. App'x at 779.

In the instant matter, Plaintiff alleged that he was disabled due to several severe mental impairments including, among other things, schizoaffective disorder, generalized anxiety disorder, PTSD, sleep terror disorder, and narcolepsy. As outlined above, the ALJ considered these allegations, together with the evidence in support thereof, which included Plaintiff's treatment notes, his activities of daily living, and the medical opinion evidence. R.29-35. As explained by the Commissioner, the ALJ extensively analyzed Plaintiff's treatment notes over time, which showed improvement in his condition after he stopped working his semiskilled job at a foundry and when he consistently took the appropriate medications. *See* Doc. No. 8 at 8. These notes showed that although Plaintiff initially loved his union job at the foundry, the job ultimately became more stressful due to forced overtime requirements and threats of possible termination. *See id.* at 8 (citing R.30, 398-400, 404). Once he stopped working in May of 2020—right around his alleged disability onset date—he reported to his treating psychiatrist, Dr. Abbas, that he had been sleeping well and that he had not had any episodes or issues since leaving the stressful conditions of his job. *See id.* The ALJ noted that his most significant incident came in early 2021

in which he reported several episodes of anxiety, paranoia, and confusion. *See id.* at 9 (citing R.31, 33, 547-49, 556). But importantly, and as the ALJ explained, Plaintiff had evidently been taking medications prescribed by his primary care provider that were contraindicated with his other medications, and once those prescriptions were adjusted, Plaintiff reported improvement in his symptoms by June of 2021. *See id.*

The ALJ also observed that notwithstanding Plaintiff's self-reported concerns, he still was able to participate in many daily activities, including basic cleaning, driving, shopping, helping his brother with projects, managing money, and interacting with others. *See id.* at 10 (citing R.32, 60, 311, 420). As the Commissioner explained, although Plaintiff testified at the hearing that he did not groom or bathe himself often, *see id.* (citing R.60), Plaintiff's mental status examinations did not identify hygiene-related issues, and on his self-completed function report he stated he had no problems with personal care. *See id.* (citing R. 28, 309, 622). As the Third Circuit has explained, "it is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity." *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) (citing *Burns v. Barnhart*, 312 F.3d 113, 129–30 (3d Cir. 2002)).

Finally, and as the Commissioner explained, the ALJ supported her RFC determination by considering the medical opinion evidence and finding some opinions more persuasive than others. *See* Doc. No. 8 at 11. For example, state agency psychologist Dr. Taren initially reviewed the record for the Disability Determination Service ("DDS") and found only mild limitations in understanding, remembering or applying information, and interacting with others. R.33. Dr. Taren further found that Plaintiff would be able to abide by a routine and endure the demands and changes of a typical task-oriented setting. R.33. The ALJ found Dr. Taren's analysis to be "partially

persuasive," but explained that given Plaintiff's history of episodic paranoid ideation and difficulties navigating work stress, more restrictive limitations were necessary. R.33. The ALJ further considered the opinion of state agency psychologist Soraya Lotus Amanullah, Ph.D. who also reviewed the record and reached similar conclusions insofar as she found Plaintiff had only mild limitations in certain functional areas. R.34. Much like Dr. Taren's assessment, however, the ALJ explained that Dr. Amanullah's findings did not fully account for Plaintiff's interactive limitations. R.34.

Despite this, Plaintiff challenges the ALJ's unfavorable decision by broadly arguing that the ALJ failed to properly weigh the medical opinion evidence, and thus, failed to properly determine his mental RFC. *See* Doc. No. 7 at 3-18. To begin, Plaintiff argues that the ALJ inappropriately rejected Dr. Abbas's 2020 opinion without satisfactory explanation, and failed to explain why she found some conclusions of Dr. Abbas's later 2021 opinion to be persuasive while simultaneously rejecting others. *See id*. at 10-11. More specifically, Plaintiff argued that although the ALJ "allegedly agreed with" Dr. Abbas's 2021 opinion, she rejected his finding that Plaintiff could only work up to "1/3 of an 8-hr workday" and that Plaintiff would miss work up to three times a month. *See id*. 7 at 10. Plaintiff argued that under the governing regulations, when the ALJ's RFC finding conflicts with opinions from a medical source, the ALJ "must explain why the opinion was not adopted." *See id.* (citations omitted). Plaintiff insists such an explanation was lacking here. *See id.* at 10-11. Indeed, Plaintiff maintains that ALJs should avoid the temptation to "play doctor," and should instead give great deference to treating psychologists who are trained in their respective areas and who personally tend to their patients' needs. *See* Doc. No. 9 at 2-3

But there is no merit to this argument. As the Commissioner correctly noted, the ALJ's Decision must be "read as a whole." *See* Doc. No. 8 at 14, n.4 (citing *Jones*, 364 F.3d at 505). In

other words, "[w]here the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that" evidence elsewhere in the opinion. *Kiernan v. Astrue*, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013). Here, the ALJ conducted an extensive longitudinal review of Plaintiff's treatment notes before turning to the medical opinion evidence. *See supra* at 4-8. Against this backdrop, the ALJ's analysis and explanations become clear. First, the ALJ explained that Dr. Abbas's 2020 opinion was not persuasive because it was not supported by his own contemporaneous notes, including many of Plaintiff's own self-reports to Dr. Abbas. R.34 (citing Exs. 10F and 11F). Next, the ALJ found that Dr. Abbas's August 2021 report was "more persuasive," because—unlike the 2020 opinion—these conclusions were consistent with the treatment records and mental health examinations during this timeframe, which showed Plaintiff's improvement with treatment and decreased stressors. R.35 (citing Exs. 11F, 15F, 16F, 20F, and 27F). And finally, the ALJ explicitly rejected Dr. Abbas's conclusion that Plaintiff would likely be absent from work two to three times per month, explaining that the record indicated that Plaintiff had significant periods of stability and improved symptoms with only episodic flares that would not preclude regular attendance throughout the year. R.34. In other words, the ALJ did exactly what Plaintiff insists was lacking—she identified the portion of the opinion which she disagreed with and provided a thoughtful explanation as to why. However unsatisfied Plaintiff may be with these explanations, it is not the responsibility of this Court to begin re-weighing the evidence or to require that the ALJ adhere to a specific form of analysis.

Next, Plaintiff argues that the ALJ also erred to the extent she rejected Dr. Ryser's evaluation without satisfactory explanation. *See* Doc. No. 7 at 11-12. But again, Plaintiff's argument amounts to nothing more than an invitation to the Court to impermissibly re-weigh the evidence. As the Commissioner correctly explained, the ALJ analyzed Dr. Ryser's examination

13

notes and found that her conclusions were inconsistent with the objective medical evidence. *See* Doc. No. 8 at 15-16. Such evidence included Dr. Abbas's mental status findings in June 2021, which were largely normal (and which were completed less than a month before Dr. Ryser's evaluation), as well as Dr. Abbas's mental status findings in July of 2021 (which were completed just a few weeks after Dr. Ryser's evaluation). *See id.* (citing R.34, 626, 635). The ALJ also explained Dr. Ryser's conclusions were not consistent with the results of her own examination. R.34. For example, the ALJ noted that Plaintiff's memory was only mildly impaired on examination, with good word recall, and that he was able to provide a coherent medical and personal history. R.34. The ALJ further explained that there was no evidence of internal stimuli, no looseness of associations or tangential thinking, Plaintiff's speech was clear and coherent, and there was no indication that he had any difficulty following instructions or staying on topic. R.34. These findings did not support Dr. Ryser's conclusions that Plaintiff had many "marked" limitations in mental functioning.

Finally, Plaintiff contends that the ALJ failed to properly evaluate Dr. Amanullah's opinion, which she found to be "partially persuasive," despite conceding that the record documented greater mental limitations for Plaintiff than those described by the consultant. *See* Doc. No. 7 at 16-18. Consistent with his other challenges, Plaintiff maintains that the ALJ "silently rejected" portions of the opinion without satisfactory explanation. *See id.* at 17. More specifically, Plaintiff maintains that although Dr. Amanullah found that he was "limited to work involving no more than one-to-two-steps," the ALJ failed to include this restriction in her mental RFC without any explanation. *See id.* at 17 (citing R. 123, 147).

However, Dr. Amanullah's report did *not* indicate that Plaintiff was "limited to work involving no more than one-to-two steps," nor did it describe such work as a "restriction." *See id.*

The report states, "[t]he Claimant is able to meet the basic mental demands to complete 1-2 step tasks on a sustained basis, despite the limitations from the psychological impairment." R.123, 147. Contrary to Plaintiff's characterization, Dr. Amanullah's finding appears to be a description of work that Plaintiff is capable of completing rather than work that Plaintiff must be expressly "limited" to, and the ALJ's recitation of said finding is a fairer representation than that provided by Plaintiff here on appeal. R.34 (citing Dr. Amanullah's report and stating she found that "Claimant is able to meet the basic mental demands to complete 1-2 steps on a sustained basis, despite limitations from the psychological impairment"). As such, there is no merit to Plaintiff's argument.[7]

Next, and beyond the medical opinion evidence, Plaintiff broadly argues that the ALJ failed to properly evaluate his subjective testimony and statements concerning his disabling conditions. *See* Doc. No. 7 at 17-21. Plaintiff explains that "an individual need not be in a vegetative state to be found disabled." *See id.* at 21 (citation omitted). According to Plaintiff, the ALJ impermissibly found that his ability to do basic household chores does not negate his own real, and well-documented, mental health limitations. *See id.* In short, Plaintiff emphasizes that the ALJ's Decision does not satisfactorily explain why some evidence was credited over others, and insists that the ALJ should have adopted a more restrictive RFC.

---

[7] Even so, and as noted by the Commissioner, *see* Doc. No. 8 at 16-17, "the ALJ is not required to incorporate every limitation contained in a medical opinion that he or she finds persuasive." *Dingman v. Kijakazi*, No. CV 21-1946, 2022 WL 3350366, at *6 (E.D. Pa. Aug. 12, 2022) (citing *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014). As the Third Circuit explained in an unpublished opinion:

> [N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole "significant" weight. On the contrary, the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner.

*Wilkinson,* 558 F. App'x at 256 (citations omitted).

Contrary to Plaintiff's arguments, ALJs are permitted to consider activities of daily living when evaluating a claimant's subjective complaints or description of his or her disabling conditions. *See supra* at 11; *see also* 20 C.F.R. § 404.1529 ("Factors relevant to your symptoms, such as pain, which we will consider include …(i) Your daily activities*."*)*; Turby v. Barnhart*, 54 F. App'x 118, 122 n.1 (3d Cir. 2002) ("Although certainly '[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity,'…, it is nonetheless appropriate for the ALJ to consider 'the number and type of activities' in which the claimant engages.") (citation omitted); *Starr v. Saul*, No. CV 19-920, 2020 WL 1975080, at *19 (E.D. Pa. Apr. 24, 2020) ("Defendant is correct. Daily activities are one factor that an ALJ should consider in evaluating the intensity and limiting effects of a claimant's impairments."). Moreover, and as the Commissioner correctly explains, the mere fact that other evidence in the record—including Plaintiff's own subjective testimony—might support a more restrictive RFC does not, by itself, render the ALJ's decision inadequate. *See* Doc. No. 8 at 19; *see also Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision.").

Ultimately, the Court's review here is limited, and upon undertaking that responsibility, I find that the ALJ reviewed the record and more than adequately explained her reasons for finding Plaintiff capable of a full range of work with several nonexertional limitations. I further find that those reasons are supported by more than a "mere scintilla of evidence." *See Chandler*, 667 F.3d at 359. At their core, Plaintiff's challenges ask the Court to improperly re-weigh the evidence and impose its own factual determinations. The Court declines such an invitation.

## IV.      CONCLUSION

For the reasons explained above, Mr. L's request for review is **DENIED**. The Court finds that the ALJ's decision was supported by substantial evidence. As such, the final decision of the Commissioner of Social Security is **AFFIRMED,** and this matter is **DISMISSED.** An appropriate Order follows.

BY THE COURT:

*s/Pamela A. Carlos*
PAMELA A. CARLOS
U.S. Magistrate Judge